The order below is hereby signed.

Signed: September 1 2022



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | Case No. 21-00041-ELG |
| **Matthew Edward Shkor,**<br>Debtor. | Chapter 7 |
| **Capital Bank, N.A.,**<br>Plaintiff, | |
| v. | Adv. Pro. No. 21-10012 |
| **Cornerstone Capital, LLC,** *et al.*,<br>Defendants. | |

### MEMORANDUM DECISION AND ORDER
### <u>ON MOTIONS FOR SUMMARY JUDGMENT</u>

Before the Court are dueling motions for summary judgment filed by Plaintiff Capital Bank, N.A. ("Capital Bank") and Defendant Cornerstone Capital, LLC ("Cornerstone"). On March 9, 2022, the Court held a combined hearing on Capital Bank's *Motion for Partial Summary Judgment* (ECF No. 47) (the "Capital Bank Partial Motion") and Cornerstone's *Motion for Summary Judgment* (ECF No. 49) (the "Cornerstone Motion"). At the conclusion of the hearing, the Court took both motions under advisement. For the reasons set forth below, the Court grants in part and denies in part the Capital Bank Partial Motion and denies the Cornerstone Motion.

I.    Background

On April 28, 2017, Matthew E. Shkor ("Mr. Shkor") acquired residential property located at 1738 R St., NW, Washington, D.C. 20009 (the "Property") by deed, which was subsequently recorded on May 1, 2017. Am. Compl. to Determine the Priority of Liens at ¶¶ 10-12, ECF No. 17. In conjunction with the purchase of the Property, Mr. Shkor executed a promissory note for $4.05 million dated April 28, 2017 (the "2017 Capital Bank Loan"), which was secured by a deed of trust in favor of Capital Bank. *Id.* at ¶ 12. On May 26, 2017, Mr. Shkor, on behalf of two of his D.C. limited liability companies, took out a loan for $1,262,500 from Cornerstone (the "Cornerstone Loan"), which was secured, at least in part, by a second deed of trust against the Property. *Id.* at ¶ 13. The Cornerstone Loan provided for additional security with two other deeds of trust on other properties located at 1753 Willard Street and 1900 Biltmore Street which were executed by Mr. Shkor – however, neither additional deed of trust was recorded. Mem. Supp. Mot. Partial Summ. J. at 4, ECF No. 47-1.

A year later, in April 2018, Mr. Shkor sought to borrow $2.0 million from Capital Bank secured by the Property, this time in the form of a home equity line of credit which would pay off the remaining existing balance of the 2017 Capital Bank Loan (the "2018 Capital Bank Loan"). In Support of the Capital Bank Partial Motion, Plaintiff alleges that the intent of Mr. Shkor and Plaintiff was for the new loan to replace the 2017 Capital Bank Loan but for the Plaintiff to retain a first position priority on the Property. In support of this position, Plaintiff points to paragraph 9 of Schedule B-I of the title commitment letter from Old Republic National Title Insurance Company ("Old Republic") to Capital Bank which required, in part, prior to issuance of a title insurance policy:

> SATISFACTION AND/OR RELEASE of Deed of Trust, Security Agreement,

> Assignment of Leases and Rents and Fixture Filing from MATTHEW E. SHKOR, to JACOB A GINSBERG, ESQUIRE and BENJAMIN SMITH, ESQUIRE, Trustees, securing CORNERSTONE CAPITAL, LLC, repayment of the sum of $1,262,500.00, which Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing was dated May 26, 2017, and recorded June 23, 2017, among the Land Records for the District of Columbia as Instrument No. 2017068787.

Mot. Partial Summ. J., Ex. N at 7, ECF No. 47-16; *see also* Mot. Summ. J., Ex. 4 at 6, ECF No. 49-3. The title insurance policy was issued on April 18, 2018 by Old Republic, without a specific reference to the Cornerstone Loan except, arguably, a tangential reference in the internal "Request to Issue Excess Risk Policy" coversheet dated April 16, 2018 wherein on question 4, "Will be able to obtain priority?", the form is marked "yes." Mot. Partial Summ. J., Ex. O at 7, ECF No. 47-17. Plaintiff also points to internal notations made by bank employees on a March 13, 2018 title report when evaluating Mr. Shkor's loan request where the handwritten note "Payoff or Release Needed" is indicated next to the Cornerstone loan on a title report. *See* Mot. Partial Summ. J., Ex. M at 3, ECF No. 47-15; *see also* Mot. Partial Summ. J., Ex. H at 4-6, ECF No. 47-10 (excerpt from deposition of Earl Edward Wise, III discussing the March 13, 2018 title report). In total, these documents provide support for Capital Bank's position that it intended for the 2018 Capital Bank Loan to retain first priority on the Property.

In addition to the written evidence provided, Capital Bank's argument also relies on an April 10, 2018 email exchange between Mr. Shkor and Mark Schuman of Cornerstone Capital[1] in which Mr. Shkor requests "that [he] be allowed to complete [the Capital Bank] refi, 100% proceeds going to pay down [the Cornerstone Capital Loan] . . . [Cornerstone Capital is] still significantly secured, and the line will be reduced by 400k . . ." Am. Compl. to Determine the Priority of Liens,

---

[1] Mr. Schuman's email address is associated with Broadwater Capital, an entity related to Cornerstone Capital.

Ex. A at 3, ECF No. 17-2. In a responsive email, there is a reference to a "pay down by $400,00." *Id.* at 2. These emails are supplemented by the affidavit of Mr. Shkor which states that "Cornerstone had agreed to release its lien on the Property" for payment of the net proceeds as evidenced by August 17, 2018 emails again referencing the "refi" of Mr. Shkor's house with excess funds being wired to Cornerstone for "paydown" of their loan. Mem. Opp'n to Mot. Summ. J., Ex. C Aff. Matthew E. Shkor, ECF No. 54-4.

In contrast, in support of the Cornerstone Motion, the Defendant argues that while they agreed to accept partial payment from the 2018 Capital Bank Loan, it was only to lower Mr. Shkor's outstanding balance and there was never an agreement to subordinate or accept less than full payment for their balance due. In support, Capital Bank points to the closing documents for the Capital Bank Loan and the lack of any written specific subordination agreement or similar documents. Cornerstone argues the failure of Capital Bank to request, much less obtain, a payoff statement or written subordination agreement prior to closing on the 2018 Capital Bank Loan supports its position that Capital Bank did not intend to retain its first position on the Property after closing. Mem. Supp. Mot. Summ. J. at 5-6, ECF No. 49-2.

Standard Title Group, LC ("Standard Title") was the settlement agent for the 2018 Capital Bank Loan. Mem. Supp. Mot. Partial Summ. J. at 5, ECF No. 47-2. To pay off the amount remaining on the 2017 Capital Bank Loan, at closing Standard Title transferred $1,583,473.95 to Capital Bank, which in turn released its first position deed of trust and recorded a new deed of trust for the 2018 Capital Bank Loan on April 24, 2018. *Id.* However, upon instruction and assignment by Mr. Shkor, the remaining proceeds of the loan, $394,948.58, were wired not to Mr. Shkor but to Cornerstone for the "pay down". *Id.* Cornerstone applied the payment towards Mr. Shkor's balance but did not release their deed of trust on the Property. It is the priority of these remaining

deeds of trust that is the key issue in this case – whether the facts and law support a strict application of the documents leading to the priority of the Cornerstone Loan or whether there is a legal or equitable basis to subordinate the Cornerstone deed of trust to the 2018 Capital Bank Loan deed of trust. Despite these key events happening in 2018, the question of the lien priority was not raised between the parties until over two and a half years later when, on or about December 11, 2020 Capital Bank was informed of Cornerstone's intent to foreclose on the Property. Am. Compl. to Determine the Priority of Liens at ¶ 28, ECF No. 17-1.

On January 5, 2021, Capital Bank filed a complaint and motion for temporary restraining order against Cornerstone, the trustees on the Cornerstone deed of trust, and Mr. Shkor in the Superior Court of the District of Columbia seeking a declaratory judgment determining the priority of liens on the Property. Notice of Removal, ECF No. 1-1. On February 5, 2021, Mr. Shkor filed a petition for relief under chapter 7 and on May 6, 2021, filed the *Notice of Removal* (ECF No. 1) removing the Superior Court action to this Court. Prior to removal, in the Superior Court the Plaintiff voluntarily withdrew the motion for a temporary restraining order and Cornerstone filed an answer. However, once notice of Mr. Shkor's bankruptcy case was filed, there was little further progress in the Superior Court case. After removal, on June 15, 2021, Capital Bank filed its *Amended Complaint to Determine the Priority of Liens* (ECF No. 17) (the "Complaint"), which, *inter alia*, added the chapter 7 trustee Bryan Ross as an additional defendant. On July 20, 2021, Cornerstone filed a *Motion to Dismiss the Adversary Proceeding* (ECF No. 26) (the "Motion to Dismiss") arguing that Capital Bank's failure to ensure that it retained first lien priority prior to executing the 2018 Capital Bank Loan rendered the relief sought in the Complaint unfounded. On September 1, 2021, after the Motion to Dismiss was fully briefed, the Court held a hearing on September 1, 2021 and at the conclusion of the hearing the Court denied the Motion to Dismiss.

*See* Order Denying Mot. to Dismiss, ECF No. 32.

On February 11, 2022, Capital Bank filed the Capital Bank Partial Motion arguing that the Court should determine that it retains its first-priority lien position on the Property following its payoff of the 2017 Capital Bank Loan under the equitable doctrine of replacement of mortgages. *See* Mem. Supp. Mot. Partial Summ. J., ECF No. 47-2. On the same day, Cornerstone filed the Cornerstone Motion, asserting that Capital Bank is not entitled to the equitable relief requested in the Capital Bank Partial Motion and that Capital Bank's failure to secure its senior lien priority on the Property prior to the execution of the 2018 Capital Bank Loan entitles Cornerstone to judgment as a matter of law. *See* Mem. Supp. Mot. Summ. J., ECF No. 49-2. More specifically, in both their pleadings and in argument, Cornerstone argues that this case is clearly and easily decided on the record title of the Property and that the application of any form of equitable relief is not appropriate in this case. Conversely, Capital Bank argues in the Capital Bank Partial Motion that the Court should apply the equitable doctrine of replacement of mortgages to this case to find that the 2018 Capital Bank Loan is entitled to the priority of the 2017 Capital Bank Loan (i.e., ahead of the Cornerstone lien). A hearing was held on the cross motions on March 9, 2022, after which the Court took the cross-motions under advisement and on March 11, 2022 entered the *Consent Order Staying Proceedings Pending Resolution of Summary Judgment Motions* (the "Stay Order"). ECF No. 62.

## II.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P.

7052.

### III. Discussion

a. *Summary Judgment Standard*

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material where it "might affect the outcome of the suit under the governing law," and a dispute is genuine if resolution thereof "could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Celotex*, 477 U.S. at 322-23. When evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013). The Court evaluates cross motions for summary judgment under the same general standards for summary judgment. *Butler v. Wash. Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 80 (D.D.C. 2017).

b. *Cornerstone's Motion for Summary Judgment*

Cornerstone alleges in its Motion for Summary Judgment that here are no genuine disputes as to material facts, even when viewed with all reasonable inferences to Capital Bank, that would warrant entry of a judgment in favor of Capital Bank and, therefore, summary judgment in favor of Cornerstone is appropriate. Further, because the alleged junior position of Capital Bank was created as a result of the actions of Capital Bank and/or its agents at the closing of the 2018 Capital

Bank Loan, Cornerstone argues that equitable relief is not appropriate or available to Capital Bank in this case. As described above, there is no challenge as to the validity or the timing of the filing of the various deeds of trust in this case on the Property, therefore in order for the Court to grant summary judgment it must find that there is no issue of material fact as to whether Capital Bank is entitled to some form of equitable relief.

In arguing the issue of whether a genuine issue of material fact exists in this case, Cornerstone alleges that the only evidence presented which challenges Cornerstone's position are "self-serving statements" of Mr. Shkor and the closing agent included with the Complaint. Mem. Supp. Mot. Summ J. at 3. But, when applying the standards for summary judgment, the Court must draw all reasonable inferences in the light most favorable to the non-moving party, which here would be to accept the affidavits as true and correct. The question of whether there was an agreement between Mr. Shkor and Cornerstone is a primary issue in this case and a key question in whether Capital Bank is entitled to equitable relief. The testimony and credibility of Mr. Shkor and Mr. Anderson, the two parties apparently most involved with the negotiations with Cornerstone, will be central to that determination, and Cornerstone challenges the veracity of those discussions in their brief and arguments. The Court cannot easily contemplate a more direct example of a genuine dispute as to a material fact. Therefore, summary judgment is not appropriate, and the Cornerstone Motion must be denied.

  c. *Capital Bank's Partial Motion for Summary Judgment*
     i. *Genuine Dispute as to Material Fact*

Capital Bank's Partial Motion for Summary Judgment is limited solely to the claim in the Complaint seeking relief under the replacement of mortgages doctrine. For the same reasons as stated above as to the existence of a genuine despite as to a material fact, Capital Bank's Partial

Motion for Summary Judgment must be denied as to the ultimate relief requested. However, in the Partial Motion for Summary Judgment, Capital Bank asks this Court to find that the courts of the District of Columbia would adopt the equitable doctrine of replacement of mortgages. For the reasons stated herein, the Court finds that the District of Columbia would adopt the replacement of mortgages doctrine as set forth in the Third Restatement of Property. The question of whether Capital Bank is entitled to relief under replacement of mortgages doctrine will be considered at trial.

    ii.    *Replacement of Mortgages Doctrine*

As acknowledged by both parties, this case presents an apparent question of first impression in the District of Columbia of whether to adopt the equitable doctrine of replacement of mortgages. The doctrine is directly related to the doctrine of equitable subrogation, a form of equitable relief that conclusively has been recognized in the courts of the District of Columbia. Before determining whether this Court believes the replacement of mortgages would be adopted by the District of Columbia, it is helpful to review the standard for equitable subrogation in the District of Columbia.

The doctrine of equitable subrogation provides an avenue for a lender who refinances a loan to retain the lien priority of the paid-off loan. *HSBC Bank USA, N.A. v. Mendoza*, 11 A.3d 229, 235 (D.C. 2010). "The purpose of equitable subrogation is 'to prevent forfeiture and unjust enrichment.'" *Smith v. First Am. Title Ins. Co. (In re Stevenson)*, 789 F.3d 197, 200 (D.C. Cir. 2015) (quoting *E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 957 (D.C. 2003)). To demonstrate entitlement to relief under a theory of equitable subrogation, a party must show that:

    (1) the party paid off the opposing party's mortgage to protect its "own interest";
    (2) the party has not "acted as a volunteer";
    (3) the party "was not primarily liable" for the opposing party's mortgage;

>
> (4) the party paid off the entirety of the opposing party's mortgage; and
> (5) subrogation would "not work any injustice to the rights of others.

See *In re Stevenson*, 789 F.3d at 201 (quoting *E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 961 (D.C. 2003)). Because Capital Bank refinanced its own mortgage, it acknowledges that it fails prong four (4) and equitable subrogation is not an applicable avenue for relief in the instant case. However, Capital Bank argues that the clear and consistent adoption of the doctrine in the District indicates that the courts of the District of Columbia, if presented with the issue, would adopt the replacement of mortgages doctrine.

Similar to the doctrine of equitable subrogation, the replacement of mortgages allows a lender to retain its senior lien priority under certain circumstances, however it applies in situations where a lender refinances its own lien. State courts which have adopted the replacement of mortgages doctrine follow the Restatement (Third) of Property, which describes the replacement of mortgages doctrine as follows:

> If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate.

Restatement (Third) of Property: Mortgages, § 7.3 (1997); *see, e.g., Deutsche Bank Nat'l Tr. Co. v. LOM Prop. Corp. (In re Allen)*, 520 B.R. 281, 289 (Bankr. E.D. Mo. 2014) ("Missouri has adopted the Restatement [Third] on Property: Mortgages, with respect to the analysis of the priority of replacement mortgages."); *US Bank, N.A. v. JPMorgan Chase Bank, N.A.*, 398 P.3d 118, 121 (Ariz. Ct. App. 2017) (noting "Arizona expressly has adopted the replacement doctrine as defined by the Restatement (Third) of Property: Mortgages § 7.3 (1997) . . . ."); *Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W. 3d 335, 340-41 (Ky. Ct. App. 2010) (quoting the replacement of mortgages

doctrine from the Restatement (Third) of Property: Mortgages and comments thereto); *Sovereign Bank v. Gillis*, 74 A.3d 1, 8-9 (N.J. Super. Ct. App. Div. 2013) (acknowledging the applicability of the Restatement (Third) of Property: Mortgages § 7.3 and directing the trial court to examine issues of "material prejudice" in an analysis of the replacement of mortgages doctrine); *Sheppard v. Interbay Funding, LLC*, 305 S.W.3d 102, 106-09 (Tex. App. 2009) ("[S]ection 7.3 [of the Restatement] expressly contemplates that the first mortgage at issue will be released of record and, as part of the same transaction, will be replaced with a new mortgage.").

While the courts of the District of Columbia have yet to weigh in directly on the replacement of mortgages doctrine, the District has a well-established history of adopting equitable doctrines and remedies to achieve a just outcome, including equitable subrogation as discussed *supra*.[2] *See Steiner v. Am. Friends of Lubavitch (Chabad)*, 177 A.3d 1246, 1257 (D.C. 2018) (adopting the equitable reformation doctrine consistent with the Restatement (Second) of Contracts § 164 (1981), allowing the court discretion in removing overbroad contractual language); *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 123 (D.C. 2014) (explaining that "courts have broad powers to fashion equitable remedies" in holding that the trial court's entrance of a protective order in a possession action was not an abuse of discretion); *Burgoon v. Lavezzo*, 92 F.2d 726, 735-36 (D.C. Cir. 1937) (holding that the right of subrogation is a "creation of equity" and must be enforced when there is a mistake of fact). Indeed, although it did not directly adopt the doctrine, in its 2021

---

[2] The Court of Appeals for the District of Columbia regularly notes "Although "[w]e ordinarily turn to the common law of Maryland for guidance when there is no District of Columbia precedent on an issue," *George Washington University v. Scott*, 711 A.2d 1257, 1260 n.5 (D.C. 1998) (citing *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983)), we are not obliged to do so, . . . ." *Schoonover v. Chavous*, 974 A.2d 876, 882 n.5 (D.C. 2009). The Court was unable to locate Maryland cases discussing the replacement of mortgages doctrine. *But see G.E. Capital Mortg. Servs. v. Levenson*, 338 Md. 227, 231, 657 A.2d 1170, 1172 (1995) ("Although the doctrine of equitable subrogation may be applied in many contexts, one context involves the refinancing of a mortgage."); *JP Morgan Chase Bank, N.A. v. Truist Bank*, No. 1658, 2020 Md. App. LEXIS 1197, at *13 (Md. Ct. Spec. App. Dec. 17, 2020) ("Equitable subrogation, by contrast, applies when a lender pays off a prior debt neither to protect the lender's own interests nor as a volunteer, but with the expectation of taking the same rights as the lender whose debt is paid off.").

opinion *Capital Bank, N.A. v. Ganges Fin. Group* ruling, the D.C. Circuit Court of Appeals analogized the doctrine of equitable subrogation to the replacement of mortgages doctrine, saying that under the Restatement (Third) of Property the "'result [of the replacement of mortgages doctrine] is analogous to subrogation.'" 2021 U.S. Dist. LEXIS 252228, at *9 (D.D.C. 2021) (quoting Restatement (Third) of Property: Mortgages, § 7.6 (1997)).

While not entirely instructive, the Circuit's holding in Capital Bank supports this Court's determination that District of Columbia courts, if given the opportunity, would adopt the replacement of mortgages doctrine. Therefore, given the history of adopting equitable doctrines within the District of Columbia and the underlying purpose of the replacement of mortgages doctrine to obtain a just outcome in situations where a senior lender refinances its debt, the Court finds that replacement of mortgages doctrine is a valid form of relief in the District of Columbia. The Capital Bank Partial Motion shall be granted, in part, finding that the replacement of mortgages doctrine is a valid form of relief in the District of Columbia. The balance of the Capital Bank Partial Motion shall be denied and Capital Bank's entitlement to relief under the replacement of mortgages doctrine shall be determined at trial.

## IV.    Conclusion

Based upon the foregoing, the Court hereby ORDERED that

1. The Capital Bank Partial Motion is granted, in part, as stated herein. The Court finds that replacement of mortgages doctrine is a valid remedy available in the District of Columbia.

2. The balance of the Capital Bank Partial Motion and the Cornerstone Motion are DENIED because there are genuine issues of material fact, which make summary judgment inappropriate in this case.

    3.    Upon entry of this Order, the stay imposed by the Stay Order is vacated.

    4.    A continued pretrial conference in this matter shall be held on October 6, 2022 at 11:00 a.m. via Zoom for Government. The parties may submit a consent scheduling order prior to the continued pretrial conference.

[Signed and dated above.]

Copies to: recipients of electronic notifications.